**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL CUNNINGHAM,                          :                    CIVIL ACTION
                                          :
                    Plaintiff             :            NO. _____
                                          :
         v.                               :
                                          :            JURY TRIAL DEMANDED
PENNSYLVANIA HOUSE                         :
DEMOCRATIC CAUCUS, FRANK                   :
DERMODY, in his official capacity,        :
PAUL PARSELLS, in his official
capacity, NORA WINKELMAN, in her
official capacity, TARA SMITH
HAZELWOOD, in her official capacity,
APRIL RISSINGER, in her official
capacity,

                    Defendants

**<u>COMPLAINT</u>**

AND NOW, comes the Plaintiff, Paul Cunningham, by and through his counsel,

Johnson, Duffie, Stewart & Weidner, P.C., who files this Complaint by respectfully

stating the following:

I.      **<u>PARTIES</u>**

1.      Plaintiff, Paul Cunningham (hereinafter "Cunningham"), is an adult

individual residing at 107 Ashton Street, Carlisle, Pennsylvania 17015.

2.      Plaintiff Cunningham was born on September 1, 1950.  At all times

relevant to this Complaint, Plaintiff Cunningham was forty (40) years of age or older.

3.      Defendant, Pennsylvania House Democratic Caucus (hereinafter "House

Democratic Caucus"), is a legislative caucus comprised of all elected Democratic

Representatives in the Pennsylvania House of Representatives. Defendant House Democratic Caucus maintains its primary office at 423 Main Capitol Building, Harrisburg, Pennsylvania 17120.

4.     Defendant, Frank Dermody (hereinafter "Dermody"), was at all times relevant hereto, a Democratic member of the Pennsylvania House of Representatives. Defendant, Dermody, at all times relevant, served as House Democratic Leader and Leader of the Pennsylvania House Democratic Caucus.

5.     Defendant, Paul Parsells (hereinafter "Parsells"), was at all times relevant hereto, the Chief of Staff of Defendant, Frank Dermody.

6.     Defendant, Nora Winkelman (hereinafter "Winkelman"), was at all times relevant hereto, the Chief Counsel of the House Democratic Caucus.

7.     Defendant, Tara Smith Hazelwood (hereinafter "Smith Hazelwood"), was at all times relevant hereto, the Deputy Chief Counsel of the House Democratic Caucus.

8.     Defendant, April Rissinger (hereinafter "Rissinger"), was at all times relevant hereto, the Operative (Member Operations Division Director) Division Director of the House Democratic Caucus.

## II.    JURISDICTION

9.     Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, conferring original jurisdiction upon the various district courts of the United States for civil actions authorized by law to be commenced by any person to recover damages under any Act of Congress providing for the protection of civil rights.

2

10.     An award of costs and attorney's fees is authorized pursuant to 42 U.S.C. § 1988.

11.     Venue is proper under 28 U.S.C. § 1391(b) because the Middle District of Pennsylvania is the district where one or more of the Defendants reside and all Defendants reside within Pennsylvania.

12.     Plaintiff Cunningham previously filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter on or about April 13, 2021.

## III.   FACTUAL ALLEGATIONS

13.     Plaintiff Cunningham incorporates by reference his allegations in paragraphs 1 through 11 as if set forth herein at length.

### A.    Plaintiff Cunningham's Hiring and Qualifications

14.     On or about March 26, 2008, Plaintiff Cunningham was hired by Defendant House Democratic Caucus to serve as Director of Democratic Information Technologies ("DIT").

15.     Prior to accepting the position of Director of DIT, Plaintiff Cunningham maintained an exemplary work background and resume, including three Masters degrees, graduation from both the United States Naval War College and United States Army War College, and receipt of both the Pennsylvania Distinguished Service Medal from Governor Tom Ridge and the Legion of Merit by the United States Army for meritorious service to both the Commonwealth of Pennsylvania and United States.

3

16.     Additionally, prior to accepting the position of Director of DIT, Plaintiff Cunningham had over twenty (20) years of work experience in leading and managing large systems integration programs, managing software projects, and completing modernization efforts in both the public and private sectors.

17.     At the time of Plaintiff Cunningham's hire, the Defendant House Democratic Caucus was embroiled in the "Bonusgate" corruption investigation.

18.     That investigation left the Caucus in a state of crisis.

19.     At the time of Plaintiff Cunningham's hire, due to the investigation, the Defendant House Democratic Caucus was undergoing extensive scrutiny and unprecedented demands from ethics watchdogs and the press on behalf of the public for immediate and lasting ethical reforms.

20.     Upon information and belief, Plaintiff Cunningham was hired, along with other new hires around the same time period, to lead landmark reforms to restore integrity, improve the management of information technology projects, modernize technology, improve asset accountability, and make cost savings and improvements to infrastructure, along with establishing acquisition processes and procedures.

21.     Between 2008 and 2012, Plaintiff Cunningham received annual employee reviews.

22.     Between 2008 and 2012, Plaintiff Cunningham was rated satisfactory, exceeding expectations or outstanding in all review criteria by his supervisors.

B.      **Hostile Work Environment**

23.     Chiefly among Plaintiff Cunningham's job duties as Director of DIT was to improve personnel accountability, personnel training, increase supervision of managers, and provide needed leadership to personnel.

24.     After his hire as Director of DIT, Plaintiff Cunningham began making reforms, demanding accountability, reorganizing, and enforcing policies and procedures that had previously been neglected including heightened information and computer security measures.

25.     On or about January 2012, as a result of the enforcement of these heightened security measures and procedures, Darryl Hazelwood, then Deputy Director of DIT and life partner of Defendant Hazelwood, was terminated from his position by Defendant Dermody for violating caucus information technology security policies.

26.     Prior to his termination, Darryl Hazelwood reported directly to Plaintiff Cunningham.

27.     Following Darryl Hazelwood's termination, Defendant Hazelwood began to ostracize Plaintiff Cunningham within the office by refusing to acknowledge his presence and excluded him from participation in office or work activities.

28.     Following Darryl Hazelwood's termination, Defendant Hazelwood and Defendant Winkelman began a character assassination campaign against Plaintiff Cunningham in order to spread false and malicious rumors about Plaintiff Cunningham's integrity and character amongst his coworkers.

29.     Upon information and belief, Defendant Hazelwood and Defendant Winkelman met, coordinated, and cooperated with each other to orchestrate and file a baseless internal complaint within the caucus' Office of Legal Counsel for the sole purpose of harming Plaintiff Cunningham's character and reputation.

30.     Upon information and belief, for the sole purpose of harming Plaintiff Cunningham's character and reputation, Defendant Hazelwood and Defendant Winkelman met, coordinated, and cooperated with each other to fabricate claims against Plaintiff Cunningham alleging unprofessional behavior.

31.     Upon information and belief, Defendant Hazelwood and Defendant Winkelman contacted, coached, and tampered with a witness prior to that witness' interview by an outside attorney as part of the internal complaint investigation for the sole purpose of harming Plaintiff Cunningham's character and reputation.

32.     The internal investigation against Plaintiff Cunningham found Defendants Hazelwood and Winkelman's allegations to be meritless and the investigation was closed.

33.     Following the close of the internal investigation, Defendants Hazelwood and Winkelman continued to work together to climb the political ranks and develop close personal relationships with Defendant Dermody and Defendant Parsells.

34.     Also following the close of the internal investigation, and despite receiving an annual employee review every year since 2008, Plaintiff Cunningham received his final employee review in 2012.

35.     Even though Plaintiff Cunningham received his final employee review in 2012, he continued to work for the Caucus until August 2019.

36.     Plaintiff Cunningham was never given any explanation for his supervisors as to why he did not receive any employee reviews for the final seven (7) years of his employment.

37.     In 2015, Defendant Hazelwood became Employment law officer in the Office of Chief Counsel and the legal advisor to the House Democratic Caucus' Human Resources Department.

38.     As part of Defendant Hazelwood's role as legal advisor to the House Democratic Caucus' Human Resources Department, Defendant Hazelwood was afforded unfettered access to personnel records, promotions, files, assignments, salaries, position classifications, and other financial and personnel matters.

39.     In the summer of 2016, Defendant Hazelwood and Defendant Rissinger became co-chairs of the Caucus' Workforce and Succession Planning Committee at the direction of Paul Parsells.

40.     The intent of the Workforce and Succession Planning Committee was to reorganize the Caucus and set the direction for succession of key personnel, including Plaintiff Cunningham.

41.     In their roles as co-chairs of the Workforce and Succession Planning Committee, Defendants Hazelwood and Rissinger were tasked with determining which employees were targets for retirement based upon age, position, and years of service, as well as determining which employees would replace those close to retirement.

7

42.     Over the period of 2018 and 2019, after eleven (11) years of service, Plaintiff Cunningham communicated to several coworkers that he planned to work an additional eight and a half (8.5) years at the caucus to reach twenty years of service.

43.     During the same time period, Defendant Hazelwood began targeting Defendant Rissinger's brother, Ryan Trevenen, as a replacement for Plaintiff Cunningham in the role of DIT Director.

44.     At the time, Ryan Trevenen served as a manager in the department led by Plaintiff Cunningham and Trevenen reported directly to Plaintiff Cunningham.

45.     Over the period of 2018 and 2019, Ryan Trevenen was thirty-six (36) or thirty-seven (37) years old; approximately thirty-two (32) years younger than Plaintiff Cunningham.

### C.     Age Discrimination

46.     On or about March 13, 2018, in a meeting between Defendant Hazelwood and one of Plaintiff Cunningham's subordinates, Defendant Hazelwood asked Cunningham's subordinate "when is Paul retiring?".

47.     During that meeting, Defendant Hazelwood also told this subordinate that Ryan Trevenen would be replacing Plaintiff Cunningham and that "people in DIT would just have to accept it."

48.     During the time period of 2018 and 2019, Defendant Hazelwood also repeatedly asked other employees when they believed Plaintiff Cunningham would retire and who they thought might replace him.

8

49.     Defendant Hazelwood also directed one of her employees, Justine Shoop Rittle, to repeatedly contact various employees to predict when Plaintiff Cunningham intended to retire.

50.     On or about June 29, 2019, in one of those meetings with a subordinate of Plaintiff Cunningham, Justine Shoop Rittle asked the employee "when the fuck is Paul retiring?"; "how old is Paul Cunningham?"; "how much money does he make?"; "does he need the money or the job?"; and "who should replace him?".

51.     After months of hearing from other employees that Defendant Hazelwood, Defendant Winkelman, and Justine Shoop Rittle were constantly commenting about his age and planning to replace him with Ryan Trevenen, Plaintiff Cunningham began to feel uncomfortable.

52.     Defendant Hazelwood and Defendant Winkelman's comments and inquiries created a hostile work environment for Plaintiff Cunningham.

53.     As a result of the creation of this hostile work environment, in April 2018, Plaintiff Cunningham met with House Ethics Officer Sam Yun and told him about the ongoing and persistent remarks about his age, and creation of a hostile work environment.

54.     Plaintiff Cunningham reported to Yun that Defendant Hazelwood, Defendant Winkelman, and Justine Shoop Rittle were unfairly and unlawfully targeting him based on his age and that he was being singled out for succession planning because of his age.

55.     At the same time, Plaintiff Cunningham asked Sam Yun whether he had to report his concerns through Defendants Winkelman and Hazelwood.   Sam Yun responded that these concerns had to be brought to Defendants Winkelman and Hazelwood and recommended that Plaintiff Cunningham seek assistance through the Pennsylvania Human Relations Commission.

56.     In short, Sam Yun advised Plaintiff Cunningham that the only redress for his concerns was to either report them directly to the individuals who were making the disparaging remarks, or seek out the help of the Pennsylvania Human Relations Commission.   The caucus would provide no safe harbor for Plaintiff Cunningham.

57.     Shortly after making his complaints known to Sam Yung, in July 2018, Plaintiff Cunningham received a letter notifying him that the Caucus has instituted a new policy and that his salary would be capped at $143,806.00 and any cost of living increases would be distributed to Cunningham as a lump sum payment and not added to his salary.

58.     Upon information and belief, Plaintiff Cunningham was the only employee in his salary category and was the lone Director in the Caucus affected by the new policy and designated to receive cost of living increases as a lump sum payment instead of an increase to salary.

59.     Paul Cunningham was one of four military veterans targeted and these four veterans were considered to be former "Leader DeWeese" people. Therefore, the four veterans could be easy prey when it came to apply the uneven salary and cost of living increase reduction policy against.

60.     Upon information and belief, the policy was created and implemented solely due to Plaintiff Cunningham's age.

61.     Following the complaint to Yun about Defendants Hazelwood and Winkelman unfairly and unlawfully targeting him because of his age, as well as the implementation of the salary policy, Plaintiff Cunningham returned to work in his department while Defendants Hazelwood and Winkelman continued to question Plaintiff Cunningham's age and projected retirement date with other employees.

62.     On or about January 30, 2019, Plaintiff Cunningham met with Defendant Parsells and complained to Defendant Parsells of the hostile work environment that he was continually subjected to, including repeated comments by Defendant Hazelwood and Defendant Winkelman to employees about Plaintiff Cunningham's age and the expectation that he would retire soon.

63.     Despite Plaintiff Cunningham complaining to Defendant Parsells that Defendants Hazelwood and Winkelman were unfairly and unlawfully targeting him based on his age and that Cunningham was being singled out for succession planning because of his age, Defendant Parsells took no action.

**D.     Whistleblower Incident**

64.     On or about March 23, 2019, Plaintiff Cunningham reported a cyber-crime against the Democratic Caucus network to Defendants Parsells and Winkelman.

65.     Specifically, the Caucus network was subject to a brute force attack over the previous weekend whereby a would-be infiltrator attempted to login to several key accounts on the network at least ten (10) times each with false credentials.

66.     Plaintiff Cunningham reported that, on March 22, 2019 and March 23, 2019, Democratic caucus employee Will Hendrickes was the would-be infiltrator who impermissibly attempted to access Democratic caucus infrastructure and network accounts.

67.     Two of the six network accounts were privileged accounts only known to someone with additional rights.   Upon reason Hendricks needed help to know those accounts as he did not have network rights privileges. In addition, and upon reason and belief someone assisted Hendricks in writing the detailed script required to attack the network. As a result, someone with knowledge either inside or outside the Caucus conspired with and assisted Hendricks in his crime.

68.     At the time of the cyber attack, Will Hendrickes and his wife were both Caucus employees and close to United States Congressman Dwight Evans, as well as many other influential and strategic members of the PA House of Representatives.

69.     Defendants Parsells and Winkelman reported the cyberattack to Defendant Dermody.   This report inflamed Defendants Parsells, Winkelman, and Dermody due to the necessary investigations that it would entail and the possible political implications that it would have within the Democratic party.

70.     As a result, even though Hendrickes committed a serious cyber-crime under both federal and state law Defendant Parsells wanted to retain Hendrickes' services and transfer him to another department in the caucus rather than deal with the political implications of termination.

71.    During the early stages of the Hendrickes investigation, Ryan Trevenen, the brother of April Rissinger obstructed the investigation by alerting Hendrickes that his activity had been reported, that a personnel action against him was pending, and that Hendrickes was likely to be suspended.

72.    Trevenen's "tip off" to Hendrickes allowed Hendrickes to destroy culpatory evidence on his caucus-issued cell phone before investigators had the opportunity to obtain it.

73.    Trevenen's "tip off" to Hendrickes was subsequently discovered by Defendants Parsells, Winkelman, and Dermody.

74.    Trevenen lied about his communications with Hendrickes to Defendant Winkelman before and immediately after the caucus was planning to suspend Hendrickes.

75.    Trevenen's lie was discovered and he was ordered by Defendant Winkelman to write a statement of his conduct for his personnel file.  No further action was taken against Trevenen.

76.    Hendrickes was subsequently terminated with cause. Neither Dermody, Parsells, or Winkelman ever reported the Hendrickes et al cyberattack to law enforcement for investigation or recovered the script used by Hendrickes. Consequently, the attacker was known only to the Democratic Caucus.  The attacker still had capabilities to do further damage to the Caucus Network and other state and federal agencies as well.

77.    Following Hendrickes termination, on June 30, 2019, Plaintiff Cunningham received an e-mail from Defendant Parsells stating that all employees would receive a 3% cost of living salary increase.

78.    However, Plaintiff Cunningham did not receive a 3% cost of living increase to his salary.

79.    Upon information and belief, Plaintiff Cunningham was the only one in the Caucus' top salary earners to receive a 3% Cost of Living which again was not added to his salary whereas the Defendants Parsells, Winkelman, Rissinger, et al gave themselves a unprecedented 6% cost of living increase without justification that was added to their salaries. Again, Paul Cunningham did not receive a 3% cost of living increase to his salary.

80.    On August 22, 2019, Plaintiff Cunningham was terminated from his position by Defendant Parsells.  Defendant Winkelman and caucus HR Director Derek Mongelli were present at the meeting.

### COUNT I
### AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) - 29 U.S. Code § 623(a)(1)
### PLAINTIFF v. ALL DEFENDANTS

81.    Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 78 above as though fully set forth herein.

82.    Plaintiff has exhausted his administrative remedies through the EEOC.

83.    Defendant, Pennsylvania House Democratic Caucus, has engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff Cunningham.

14

84.    Defendants, Frank Dermody, Paul Parsells, Nora Winkelman, Tara Smith Hazelwood, and April Rissinger have engaged in the creation, development, and implementation of an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff Cunningham.

85.    The actions of the Defendants, both individually and collectively, in terminating Plaintiff's employment based on his age and subsequent failure to hire, constituted violations of the ADEA.

86.    Defendants have intentionally discriminated against Plaintiff Cunningham, in violation of the ADEA, by:

   a.  Utilizing and controlling a workforce succession planning group that deters employees aged forty (40) and older from maintaining current employment;

   b.  Utilizing and controlling a workforce succession planning group that targets employees aged forty (40) and older for retirement;

   c.  Utilizing biased policies, guidelines, and procedures that discriminate against employees aged forty (40) and older;

   d.  Implementing a retirement policy that deters employees aged forty (40) and older from maintaining their positions of employment;

   e.  Implementing a retirement policy that discriminates against employees aged forty (40) who wish to retain their positions of employment;

  f.  Systematically and intentionally discriminating against employees aged forty (40) and older throughout the employee review and retention process.

  g.  Implementing specific salary policies targeting employees aged forty (40) and older whereby cost of living increases are not added to base salaries.

  h.  Placing a cap on Plaintiff Cunningham's salary due to his age.

  i.  Terminating Plaintiff Cunningham's employment due to his age.

87.  These entity-wide policies were intended and did have the effect of denying employees aged forty (40) and older, including Plaintiff Cunningham, employment opportunities and continued employment because of their ages.

88.  The discriminatory acts of Defendants that constitute Defendants' pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

89.  As a direct and proximate result of Defendants' creation, development, and implementation of discriminatory practices, policies and patterns in violation of the ADEA as described above, Plaintiff Cunningham has suffered permanent and irreparable harm, resulting in the loss of his employment, causing damages including, but not limited to, lost past and future earnings, lost compensation, loss of benefits, loss of value of certain benefits, loss of future earning power, loss of back pay, loss of front pay and interest due thereon.

16

90.     The foregoing conduct constitutes illegal, intentional discrimination, and unjustified disparate treatment prohibited by 29 U.S. Code § 623(a)(1).

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against the Defendants and Order that:

a.     Defendants compensate Plaintiff for the wages and other benefits due to loss of employment caused by Defendants' unlawful conduct;

b.     Defendants compensate Plaintiff for front pay, as permitted;

c.     Defendants compensate Plaintiff for liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary relief as permitted;

d.     Defendants pay Plaintiff pre- and post-judgment interests, costs of suit, attorney fees, expert witness fees as permitted by law; and

e.     judgment be entered against Defendants for any other relief that this Court deems just and proper.

## COUNT II
## AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) - 29 U.S. Code § 623(a)(2)
## PLAINTIFF v. ALL DEFENDANTS

91.     Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 87 above as though fully set forth herein.

92.     The actions of the Defendants, both individually and collectively, in terminating Plaintiff's employment based on his age and subsequent failure to hire, constituted violations of the PHRA.

17

93.     Defendants have created, developed, implemented and maintained discriminatory policies, patterns, and practices that have an adverse impact on employees aged forty (40) and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age, including but not limited to the following:

a.  Utilizing and controlling a workforce succession planning group that deters employees aged forty (40) and older from maintaining current employment;

b.  Utilizing and controlling a workforce succession planning group that targets employees aged forty (40) and older for retirement;

c.  Utilizing biased policies, guidelines, and procedures that discriminate against employees aged forty (40) and older;

d.  Implementing a retirement policy that deters employees aged forty (40) and older from maintaining their positions of employment;

e.  Implementing a retirement policy that discriminates against employees aged forty (40) who wish to retain their positions of employment;

f.  Systematically and intentionally discriminating against employees aged forty (40) and older throughout the employee review and retention process;

g.  Implementing specific salary policies targeting employees aged forty (40) and older whereby cost of living increases are not added to base salaries.

94.     Defendants have created, developed, implemented and maintained these discriminatory policies, patterns, and practices both within and outside the liability period for this case.

95.     Defendants created, developed, implemented and maintained these discriminatory policies, patterns, and practices for the sole purpose of limiting, segregating and/or classifying employees based on age.

96.     Defendants created, developed, implemented and maintained these discriminatory policies, patterns, and practices based on age in order to deprive employees aged forty (40) and older for employment opportunities, including, but not limited to, retention of their employment positions.

97.     As a direct and proximate result of Defendants' discriminatory policies, patterns, and practices, Plaintiff Cunningham was unfairly and unlawfully limited, segregated, and classified because of his age.

98.     As a direct and proximate result of Defendants' discriminatory policies, patterns, and practices, Plaintiff Cunningham was deprived of the opportunity to maintain and/or retain his employment position based upon his age.

99.     As a direct and proximate result of Defendants' creation, development, and implementation of discriminatory practices, policies and patterns in violation of the PHRA as described above, Plaintiff Cunningham has suffered permanent and irreparable harm, resulting in the loss of his employment, causing damages including, but not limited to, lost past and future earnings, lost compensation, loss of benefits, loss

of value of certain benefits, loss of future earning power, loss of back pay, loss of front pay and interest due thereon.

100.   As may further direct result of the aforesaid unlawful discriminatory practices, policies and patterns in violation of the PHRA, Plaintiff has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

101.   The foregoing conduct constitutes illegal, intentional discrimination, and unjustified disparate treatment prohibited by 29 U.S. Code § 623(a)(2).

**COUNT III**
**PENNSYLVANIA HUMAN RELATIONS ACT- 43 P.S. §§ 951-963**
**PLAINTIFF v. ALL DEFENDANTS**

102.   Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 96 above as though fully set forth herein.

103.   Defendant, Pennsylvania House Democratic Caucus, has engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff Cunningham based upon his age and in violation of the Pennsylvania Human Relations Act.

104.   Defendants, Frank Dermody, Paul Parsells, Nora Winkelman, Tara Smith Hazelwood, and April Rissinger, have engaged in the creation, development, and implementation of an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff Cunningham based upon his age and in violation of the Pennsylvania Human Relations Act.

105.   Defendants have created, developed, implemented and maintained discriminatory policies, patterns, and practices that have an adverse impact on

employees, including Plaintiff Cunningham, based solely on their ages, including but not limited to the following policies, patterns, and practices:

  a. Utilizing and controlling a workforce succession planning group that deters employees aged forty (40) and older from maintaining current employment;

  b. Utilizing and controlling a workforce succession planning group that targets employees aged forty (40) and older for retirement;

  c. Utilizing biased policies, guidelines, and procedures that discriminate against employees aged forty (40) and older;

  d. Implementing a retirement policy that deters employees aged forty (40) and older from maintaining their positions of employment;

  e. Implementing a retirement policy that discriminates against employees aged forty (40) who wish to retain their positions of employment;

  f. Systematically and intentionally discriminating against employees aged forty (40) and older throughout the employee review and retention process;

  g. Implementing specific salary policies targeting employees aged forty (40) and older whereby cost of living increases are not added to base salaries.

106.    Defendants have created, developed, implemented and maintained these discriminatory policies, patterns, and practices both within and outside the liability period for this case.

107.    Defendants created, developed, implemented and maintained these discriminatory policies, patterns, and practices without any bona fide occupational qualification.

108.    Defendants created, developed, implemented and maintained these discriminatory policies, patterns, and practices in order to deny continued employment to employees, including Plaintiff Cunningham, based upon age.

109.    Defendants created, developed, implemented and maintained these discriminatory policies, patterns, and practices in order to limit employment opportunities to employees, including Plaintiff Cunningham, based upon age.

110.    As a direct and proximate result of Defendants' discriminatory policies, patterns, and practices as described above, Plaintiff Cunningham was deprived of the opportunity to maintain and/or retain his employment position based upon his age.

111.    As a direct and proximate result of Defendants' creation, development, and implementation of discriminatory policies and patterns as described above, Plaintiff Cunningham has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

112.    The foregoing conduct constitutes illegal, intentional discrimination, and unjustified disparate treatment prohibited by 43 P.S. § 955.

**COUNT IV**
**PENNSYLVANIA HUMAN RELATIONS ACT- 43 P.S. §§ 1421-1428**
**PLAINTIFF v. DEFENDANT DEMOCRATIC CAUCUS**

113.    Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 107 above as though fully set forth herein.

22

114.   At all times relevant, Plaintiff was an employee under 43 P.S. § 1422.

115.   At all times relevant, Defendant, Democratic Caucus, was an employer under 43 P.S. § 1422.

116.   On or about March 23, 2019, Plaintiff Cunningham verbally reported an occurrence of wrongdoing, namely a brute force cyber-attack against the Democratic Caucus network to Defendants Parsells and Winkelman in their official positions within his employer, Defendant Democratic Caucus.

117.   Plaintiff Cunningham made this report in good faith to appropriate authorities.

118.   Plaintiff Cunningham was terminated from his employment position because he made this good faith report of wrongdoing to his employer.

## COUNT V
## FAIR LABOR STANDARDS ACT (FLSA) - 29 U.S. Code. § 215
## PLAINTIFF v. DEFENDANT DEMOCRATIC CAUCUS

119.   Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 113 above as though fully set forth herein.

120.   In April 2018, Plaintiff Cunningham made a verbal complaint to House Ethics Officer Sam Yun and told him that he was experiencing ongoing and persistent remarks about his age, and the creation of a hostile work environment due to the actions of Defendants Hazelwood and Winkelman.

121.   Plaintiff Cunningham informed Yun that the actions of Defendants Hazelwood and Winkelman were illegal and that he was being targeted because of his age.

122.   Plaintiff Cunningham's complaint to Yun served as notice that Plaintiff Cunningham was asserting his rights under the ADEA.

123.   In making his complaint to Yun, Plaintiff Cunningham engaged in protected activity under the FLSA.

124.   On or about January 30, 2019, Plaintiff Cunningham met with Defendant Parsells and made a verbal complaint to Defendant Parsells that Cunningham was being subjected to a hostile work environment, including repeated comments by Defendant Hazelwood and Defendant Winkelman to employees about Plaintiff Cunningham's age and the expectation that he would retire soon.

125.   Upon information and belief, Plaintiff Cunningham informed Defendant Parsells that the actions of Defendants Hazelwood and Winkelman were illegal and that he was being targeted because of his age.

126.   Plaintiff Cunningham's complaint to Defendant Parsells served as notice that Plaintiff Cunningham was asserting his rights under the ADEA.

127.   In making his complaint to Defendant Parsells, Plaintiff Cunningham engaged in protected activity under the FLSA.

128.   Plaintiff Cunningham was terminated from his position of employment because he made complaints to Yun and Defendant Parsells about being the subject of age discrimination within the workplace.

**COUNT VI**
**WRONGFUL TERMINATION – RETALIATION (ADEA)**
**PLAINTIFF v. DEFENDANT DEMOCRATIC CAUCUS**

129.   Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 123 above as though fully set forth herein.

130.   In April 2018, Plaintiff Cunningham made a verbal complaint to House Ethics Officer Sam Yun and told him that he was experiencing ongoing and persistent remarks about his age, and the creation of a hostile work environment due to the actions of Defendants Hazelwood and Winkelman.

131.   Plaintiff Cunningham informed Yun that the actions of Defendants Hazelwood and Winkelman were illegal and that he was being targeted because of his age.

132.   Plaintiff Cunningham's complaint to Yun served as notice that Plaintiff Cunningham was asserting his rights under the ADEA.

133.   In making his complaint to Yun, Plaintiff Cunningham sought to exercise his rights under the ADEA.

134.   On or about January 30, 2019, Plaintiff Cunningham met with Defendant Parsells and made a verbal complaint to Defendant Parsells that Cunningham was being subjected to a hostile work environment, including repeated comments by Defendant Hazelwood and Defendant Winkelman to employees about Plaintiff Cunningham's age and the expectation that he would retire soon.

135.   Upon information and belief, Plaintiff Cunningham informed Defendant Parsells that the actions of Defendants Hazelwood and Winkelman were illegal and that he was being targeted because of his age.

136.   Plaintiff Cunningham's complaint to Defendant Parsells served as notice that Plaintiff Cunningham was asserting his rights under the ADEA.

137.   In making his complaint to Defendant Parsells, Plaintiff Cunningham sought to exercise his rights under the ADEA.

138.   Plaintiff Cunningham was terminated from his position of employment because he made complaints to Yun and Defendant Parsells about being the subject of age discrimination within the workplace.

**COUNT VII**
**WRONGFUL TERMINATION – RETALIATION (WHISTLEBLOWER)**
**PLAINTIFF v. DEFENDANT DEMOCRATIC CAUCUS**

139.   Plaintiff Cunningham incorporates by reference the allegations contained in paragraphs 1 through 136 above as though fully set forth herein.

140.   On or about March 23, 2019, Plaintiff Cunningham verbally reported an occurrence of wrongdoing, namely a brute force cyber-attack against the Democratic Caucus network to Defendants Parsells and Winkelman in their official positions within his employer, Defendant Democratic Caucus.

141.   Plaintiff Cunningham made this report in good faith to appropriate authorities.

142.   In making his report to Defendants Parsells and Winkelman, upon information and belief, Plaintiff Cunningham informed Defendants Parsells, Winkelman

26

and Democratic Caucus that the actions of the would-be infiltrator, Will Hendrickes, were illegal.

143.    In making his report to Defendants Parsells and Winkelman, upon information and belief, Plaintiff Cunningham informed Defendants Parsells, Winkelman, and Democratic Caucus that Hendrickes' attempts to access the Caucus network constituted a significant safety concern to not only the Caucus network, but also to the sensitive and personal employee information contained thereon.

144.    Plaintiff Cunningham's report to Defendants Parsells and Winkelman served as notice that Plaintiff Cunningham was asserting his rights as a whistleblower in reporting illegal activity to his superiors and employer.

145.    Plaintiff Cunningham was terminated from his employment position because he made this good faith report of wrongdoing to his superiors and employer.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against the Defendants and Order that:

a.  Defendants compensate Plaintiff for the wages and other benefits due to loss of employment caused by Defendants' unlawful conduct;

b.  Defendants compensate Plaintiff for front pay, as permitted;

c.  Defendants compensate Plaintiff for liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary relief as permitted;

d.  Defendants pay Plaintiff pre- and post-judgment interests, costs of suit, attorney fees, expert witness fees as permitted by law; and

e.  judgment be entered against Defendants for any other relief that this Court deems just and proper.

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER

By:  _____

Wayne M. Pecht, Esquire
Attorney I.D. No. 38904
Wade D. Manley, Esquire
Attorney I.D. No. 87244
Jason A. Statler, Esquire
Attorney I.D. No. 323403
301 Market Street ~ P. O. Box 109
Lemoyne, PA  17043-0109
Telephone (717) 761-4540
DATE: June 29, 2021                    Attorneys for Plaintiff

:1284390